IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EUN HYE SONG, ) Civ. No. 15-00094 ACK-RLP<br>)<br>      Plaintiff, )<br>)<br>  v. )<br>)<br>KBOS, INC., a Hawaii )<br>corporation; MORNING STAR )<br>CRUISES, INC., a Hawaii )<br>corporation; JOHN DOES 1-10; )<br>JANE DOES 1-10; DOE ENTITIES 1- )<br>10; DOE PARTNERSHIPS 1-10; DOE )<br>LIMITED LIABILITY COMPANIES 1- )<br>10; DOE CORPORATIONS 1-10; and )<br>DOE GOVERNMENTAL AGENCIES 1-10, )<br>)<br>      Defendants. )<br>) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

For the following reasons, the Court hereby GRANTS Defendants' Motion to Dismiss and DISMISSES WITHOUT PREJUDICE Plaintiff's Complaint in its entirety. Plaintiff must file any amended complaint within thirty days of the entry of this Order.

**FACTUAL BACKGROUND**[1/]

This case arises out of injuries Plaintiff Eun Hye Song

---

[1/] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

alleges she suffered while on a "Banana Boat" ride during her honeymoon in Oahu. (Compl. (Doc. No. 9-3).) Plaintiff is a resident of the Republic of South Korea. (Id. ¶ 1.) Defendants KBOS, Inc. and Morning Star are Hawaii corporations (together, "Defendants"). (Id. ¶¶ 2-3.) Plaintiff alleges that Defendant KBOS is the exclusive sales agent for Defendant Morning Star, and that Morning Star is in the business of providing recreational ocean activities such as parasailing, jetskiing, and Banana Boat rides.[2/] (Id. ¶¶ 4-5.)

On or around May 26, 2012, Plaintiff and her husband participated in a Banana Boat ride offered by Defendants. (Compl. ¶¶ 6-8.) Plaintiff alleges that, prior to boarding the Banana Boat, neither she nor her husband were given any safety instructions regarding the Banana Boat. (Id. ¶ 11.) Plaintiff further alleges that the two boat operator made "a too sharp turn at high speed," causing Plaintiff to be thrown from the Banana Boat and injured. (Id. ¶ 12.) Plaintiff alleges that she suffered a major fracture to her right leg "requiring surgical implanting of screws to repair the fracture, multiple extended stays in the hospital, and extensive rehabilitation." (Id. ¶ 13.) This suit followed.

---

[2/] A "banana boat" is an inflatable device in the shape of a banana made for two people to ride while it is towed behind a motorized water vehicle. (Id. ¶ 9.)

**PROCEDURAL BACKGROUND**

On May 23, 2014, Plaintiff filed her Complaint in the Circuit Court of the First Circuit, State of Hawaii, alleging three claims against Defendants: (1) negligence, (2) strict liability, and (3) breach of warranty. (Id. ¶¶ 14-28.) On March 23, 2015, Defendants removed the case to this district court. (Doc. No. 1.)

Defendants filed the instant Motion to Dismiss on March 30, 2015. (Doc. No. 7.) Plaintiff filed her untimely memorandum in opposition on August 13, 2015. (Doc. No. 22.) Defendants filed their Reply on August 17, 2015.[3] (Doc. No. 24.)

A hearing on the motion was held on August 31, 2015.

**STANDARD**

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir.

---

[3] In their Reply, Defendants ask the Court to strike Plaintiff's late-filed opposition. Defendants correctly point out that Plaintiff filed her opposition three days late without even purporting to offer any justification, and without seeking leave of Court to do so. The Court will nevertheless consider the opposition; however, the Court cautions Plaintiff that any further violations of the Local Rules may result in sanctions, including dismissal.

2011).

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012) (citation omitted). The Court may not dismiss a "complaint containing allegations that, if proven, present a winning case . . . no matter how unlikely such winning outcome may appear to the district court." Balderas v. Countrywide Bank, N.A., 664 F.3d 787, 791 (9th Cir. 2011).

Nonetheless, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted). "[O]nly pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth." United States v. Corinthian Colls., 655 F.3d 984, 991 (9th Cir. 2011) (citation omitted). A "formulaic recitation of the elements of a cause of action" will not defeat a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard . . . asks for more than a sheer possibility that a

defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57). Moreover, the Court need not accept as true allegations that contradict the complaint's exhibits, documents incorporated by reference, or matters properly subject to judicial notice. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 550, 588 (9th Cir. 2008); Sprewell v. Golden State Warriors, 255 F.3d 979, 988 (9th Cir. 2001).

The Court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts." OSU Student Alliance v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012). Leave to amend "is properly denied, however, if amendment would be futile." Carrico v. City & County of S.F., 656 F.3d 1002, 1008 (9th Cir. 2011).

## **DISCUSSION**

In the instant motion, Defendants seek dismissal of the Complaint on two alternative grounds. First, Defendants assert that they are entitled to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5) because the Complaint was never properly served upon them. Second, Defendants assert that, even if the Complaint were properly served, it should nevertheless be

dismissed for failure to state a claim under Rule 12(b)(6). The Court addresses each argument in turn.

**I.  Dismissal Under Rule 12(b)(5)**

First, Defendants assert that, because Plaintiff failed to properly serve the Complaint upon them, they are entitled to dismissal under Federal Rule of Civil Procedure 12(b)(5).[4/] Under Rule 12(b)(5), the Court is empowered to dismiss a case if service of process is insufficient. The burden is on the party claiming proper service to establish valid service. Taniguchi v. Native Hawaiian office of Atty. Gen., Civ. No. 09-00117 SOM-KSC, 2009 WL 1404731, at *2 (D. Haw. May 15, 2009) (citing Cranford v. United States, 359 F. Supp. 2d 981, 984 (E.D. Cal. 2005)). If the service of process is found to be insufficient, the Court has broad discretion to dismiss the action or to retain the case but quash the service that has been made on the defendant. Id.

Generally, to determine whether service of process was proper for purposes of Rule 12(b)(5), courts look to the requirements of Rule 4 of the Federal Rules of Civil Procedure.

---

[4/] Contrary to Plaintiff's assertions in her memorandum in opposition, Defendants' removal of the instant case from state court to federal court did not constitute a waiver of Defendants' right to challenge the sufficiency of service. See, e.g., Barnard v. Watson, Civ. No. 2:14-CV-0024-TOR, 2014 WL 2573238, at *1 (E.D. Wash. June 9, 2014) (citing Wabash W. Ry. v. Brow, 164 U.S. 271, 279 (1896) (holding that the removal of a case from state court to federal court constitutes a special appearance and does not waive the defendant's right to contest service of process)).

Because, however, service of process was attempted in this case prior to removal to federal court, the sufficiency of that service must be assessed in accordance with Hawaii state law. See Lee v. City of Beaumont, 12 F.3d 933, 937 (9th Cir. 1993) ("Rule 4(j) does not apply to service of process which was attempted prior to removal; the sufficiency of service in this case is determined according to state law because service of process occurred before removal."), overruled on other grounds by California Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008).

As is relevant here, under the Hawaii Rules of Civil Procedure, a complaint must be served:

> Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Haw. R. Civ. P. 4(d)(3). A complaint may also be served upon a domestic corporation such as Defendants "in the manner prescribed by any statute." Id. R. 4(d)(8).

Under Hawaii Revised Statutes § 414-64, service may be issued against a corporation

> in the manner provided by law upon any registered agent, officer, or director of the corporation who is found within the jurisdiction of the court ...;

7

> or if any registered agent, officer, or director
> cannot be found, upon the manager or
> superintendent of the corporation or any person
> who is found in charge of the property, business,
> or office of the corporation within the
> jurisdiction.

Haw. Rev. Stat. § 414-64(a).

      Here, Plaintiff filed her Complaint in state court on May 23, 2014. (Doc. No. 9-3.) On March 3, 2015, Homer Kuroda, a Civil Deputy Sheriff and private process server, attempted to serve a copy of the Complaint and summons on Defendants. (Opp'n, Kuroda Decl. ¶¶ 2-4.) Mr. Kuroda states in his declaration in support of Plaintiff's memorandum in opposition that he consulted the Hawaii Department of Commerce and Consumer Affairs ("DCCA") and found that Paul Yip is the Chief Executive Officer, President, and registered agent of both Defendants KBOS and Morning Star, and that his listed address is 49-132 Kamehameha Highway, Kaneohe, Hawaii. (Id. ¶ 5; Mot., Yip Decl. ¶¶ 1-2.) Located at 49-132 Kamehameha Highway is the Coral Kingdom store. (Opp'n, Kuroda Decl. ¶ 7.) Mr. Yip states in his declaration in support of the instant Motion, however, that Coral Kingdom is a separate business entity from KBOS and Morning Star. (Mot., Yip Decl. ¶ 2.)

      Mr. Kuroda and Mr. Yip provide somewhat different accounts of what occurred on March 3, 2015 at the Coral Kingdom store. According to Mr. Yip's declaration, "a male individual" entered the Coral Kingdom and asked whether Mr. Yip was present,

upon which the staff members informed the gentleman that Mr. Yip "was not present and in a meeting away from the office." (Id. ¶ 3.) Mr. Yip states that the man then left a copy of the Complaint and summons on a table in the Coral Kingdom store and walked off. (Id. ¶ 4.) Mr. Yip states that neither he nor any other officer or agent designated to accept service on behalf of Defendants accepted or acknowledged service of the Complaint and summons. (Id. ¶ 5.)

Mr. Kuroda, on the other hand, states that he entered the Coral Kingdom store on March 3, 2015, and asked a woman who worked there where Paul Yip was. (Opp'n, Kuroda Decl. ¶ 8.) Mr. Kuroda states that the woman told him that Mr. Yip was in his office, upstairs, and directed Mr. Kuroda to a woman she said was Mr. Yip's wife. (Id. ¶ 9-11.) Mr. Kuroda states that he then spoke with Mr. Yip's wife, Keiko Yip, who, according to the DCCA records, is the Vice President and director of KBOS and the Vice President, Secretary, and director of Morning Star. (Opp'n, Ex. 1.) Mr. Kuroda states that Ms. Yip told him that Mr. Yip had an office at the Coral Kingdom store, but was not in his office at the time. (Opp'n, Kuroda Decl. ¶¶ 12-13, 16.) Mr. Kuroda further states that Ms. Yip would not permit Mr. Kuroda to go upstairs to the office to check for Mr. Yip, and refused to contact Mr. Yip herself. (Id. ¶¶ 13-15.) Mr. Kuroda then attempted to hand Ms. Yip the Complaint and summons; however, she refused to take the

documents, and Mr. Kuroda thereafter left them on "a nearby counter" located "approximately one foot away" from Ms. Yip, and advised Ms. Yip that he was serving the documents. (Id. ¶¶ 18-20.)

Plaintiff offers as corroboration for Mr. Kuroda's account two Return and Acknowledgment of Service documents, which purport to demonstrate that service was made upon KBOS and Morning Star in a manner consistent with Mr. Kuroda's statements. (Doc. Nos. 9-6, 9-7.) The documents state that KBOS and Morning Star, respectively, were served on March 3, 2015 at 1:00 p.m. at 49-132 Kamehameha Highway, Kaneohe, Hawaii 96744 via delivery of the Complaint to "Keiko Yip, manager for Paul S.K. Yip," who is "the agent and authorized agent" of Defendants. (Id.) On both documents, however, the signature line indicating an acknowledgment of service by Ms. Yip is blank. (Id.) Generally, "[a] signed return of service constitutes prima facie evidence of valid service"; however, because the return of service documents were not signed here, they are of little help to the Court in assessing whether Defendants were properly served. See S.E.C. v. Internet Solutions for Business Inc., 509 F.3d 1161, 1166 (9th Cir. 2007).

Nevertheless, the Court concludes that Defendants were properly served when Mr. Kuroda delivered the documents to Ms. Yip. As discussed above, Plaintiff was required to deliver the

10

Complaint and summons to "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process" on behalf of Defendants. See Haw. R. Civ. P. 4(d)(3). Here, as discussed above, according to the DCCA records, Ms. Yip is the Vice President and director of KBOS and the Vice President, Secretary, and director of Morning Star. (Opp'n, Ex. 1.) Thus, while she is not the designated agent for either Defendant, she is clearly an officer of both corporations. It therefore appears that, when Mr. Kuroda attempted to hand a copy of the Complaint and summons to Ms. Yip, and subsequently left them on a nearby counter when she refused to take possession of them,[5] proper service was effectuated under Hawaii law.

---

[5] It appears that the fact that Ms. Yip did not actually take possession of the papers is of no import. Where a defendant attempts to avoid service by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant. See Errion v. Connell 236 F.2d 447, 457 (9th Cir. 1956) (service sufficient when sheriff pitched the papers through a hole in defendant's screen door after she spoke with him and ducked behind a door to avoid service); Doe v. Qi, 349 F. Supp. 2d 1258, 1275 (N.D. Cal. 2004) (service proper where the process server apprised the defendant that service was being effectuated, but the defendant turned his back and refused to take the papers); Novak v. World Bank, 703 F.2d 1305, 1310 n. 14 (D.C. Cir. 1983) ("When a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person."); see also 4A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1095 (3d ed.). Here, Mr. Kuroda states that he clearly informed Ms. Yip that he was serving the documents and left them on a counter approximately a foot away from where she was standing. (Opp'n, Kuroda Decl. ¶¶ 20-21.) The Court is therefore satisfied that
(continued...)

While Mr. Yip's account of the events at the Coral Kingdom on March 3, 2015 lacks many of the details from that of Mr. Kuroda, he does not appear to dispute Mr. Kuroda's assertion that he spoke with and attempted to serve Ms. Yip. Specifically, in Mr. Yip's declaration in support of Defendants' Reply, he does not contradict Mr. Kuroda's assertion that Ms. Yip was present at the Coral Kingdom store on March 3, 2015, or that Mr. Kuroda spoke with her. Indeed, Mr. Yip states that "Mrs. Yip and Coral Kingdom employees" informed Mr. Yip that a man had come to the store looking for Mr. Yip and had left a copy of the Complaint and summons there. (Reply, Yip Decl. ¶ 3.) Mr. Yip therefore does not appear to contest that Mr. Kuroda interacted with Ms. Yip and attempted to serve the papers upon her. Rather, Mr. Yip insists that the Coral Kingdom is a separate business from Morning Star and KBOS and, thus, service was improper. (Id.) Because, however, Ms. Yip is an officer of both Morning Star and KBOS, Mr. Kuroda's service upon her was sufficient under Hawaii law, regardless of where in Hawaii that service took place. See Haw. R. Civ. P. 4(d)(3); Haw. Rev. Stat. § 414-64(a).

Because Mr. Kuroda's account of his attempted service upon Ms. Yip appears to be undisputed, and because service upon Ms. Yip is sufficient under Hawaii law, the Court concludes that

---

[5]/(...continued)
service upon Ms. Yip was, in fact, sufficient, notwithstanding her refusal to take possession of the papers.

Plaintiff has met her burden of demonstrating adequate service of process here.[6] The Court therefore DENIES Defendants' Motion to the extent they seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5).

## II. Dismissal Under Rule 12(b)(6)

Defendants argue alternatively that, even if the Court finds the Complaint was properly served, it must nevertheless fail under Rule 12(b)(6). As discussed above, to survive a Rule 12(b)(6) motion to dismiss, a complaint need not contain detailed factual allegations, but must at least "provide the 'grounds' of [the plaintiff's] 'entitlement to relief.'" Twombly, 550 U.S. at 555 (internal citation and alteration omitted). The Supreme Court has stated that this "requires more than labels and conclusions, and a formulaic recitations of the elements of a cause of action will not do." Id. A complaint must therefore do more than "merely create[] a suspicion of a legally cognizable right of action"; rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citations and alterations omitted). Here, even accepting the allegations of the Complaint as true and construing them in the light most favorable to Plaintiff, the Court concludes that the Complaint fails to

---

[6] Because the Court concludes that the March 3, 2015 service of process was sufficient under Hawaii law, it need not address Plaintiff's arguments regarding subsequent attempts at service on July 17, 2015 and at a later date via mail. (See Opp'n at 16-18.)

13

meet this standard.

As an initial matter, it is unclear from the face of the Complaint whether Plaintiff is bringing her claims under Hawaii state law or Federal maritime law. Plaintiff states in the Complaint that her injuries "occurred as a passenger upon a marine time [sic] vessel as defined under 46 U.S.C. Section 115." (Compl. ¶ 14.) That provision simply defines the term "vessel" as it is used under Title 46 of the U.S. Code, the Federal maritime statutes. It does not, however, set forth any causes of action, and Plaintiff's reference to it does little to clarify her theory of liability for each of her three causes of action.

With respect to Plaintiff's strict liability and breach of warranty claims, she makes some allegations suggesting that they are brought pursuant to maritime law (<u>see, e.g.</u>, Compl. ¶ 21 (alleging that Defendants "were engaged in the business of providing ocean activities"); ¶ 26 (alleging that Defendants "warranted to Plaintiff that their vessels, and their equipment were seaworthy and reasonably fit for their intended use")); however, she makes other allegations that appear to sound in state tort law (<u>see, e.g.</u>, Compl. ¶ 22 (alleging that the Banana Boat "failed to meet the consumer expectations of safety and was unreasonably dangerous and in a defective condition as to design and marketing" and that Defendants "failed to warn or give adequate warning calculated to reach the ultimate users or

consumers of the dangers of the use of the Banana Boat"); ¶ 27 (alleging that Defendants "failed to provide and/or operate their vessel in a safe manner, which was unreasonably dangerous and harmful to Plaintiff and was therefore defective")). Thus, at times it appears that Plaintiff is bringing claims for strict liability and breach of the warranty of seaworthiness under maritime law, while at other times it appears she is bringing claims for breach of warranty and strict liability in the context of state products liability law. Given the juxtaposition of these allegations, and the lack of any specific factual assertions that meaningfully identify the bases of Plaintiff's claims, it is impossible to determine from the face of the Complaint whether Plaintiff is bringing her strict liability and breach of warranty claims pursuant to state law or Federal maritime law.

As to her negligence claim, Plaintiff does state that Defendants "are legally responsible for their negligence in causing Plaintiff's [sic] Song's injuries under 46 U.S.C. et. seq." (Compl. ¶ 19.) Even assuming Plaintiff's negligence claim does, in fact, sound in maritime law, however, absent more specific allegations, the Court cannot discern the legal basis of the claim. Title 46 contains eight subtitles, each with numerous chapters and hundreds of sections. Plaintiff's vague citation to the entire Federal maritime statutory scheme, absent more, is simply insufficient to give Defendants fair notice of the claims

15

against them and the grounds upon which the Complaint stands. See Twombly, 560 U.S. at 555 (holding that a pleader must give the defendant "fair notice" of the grounds upon which a claim rests); Lopez v. Coca-Cola, Civ. No. 1:13-CV-01217-LJO, 2013 WL 5532160, at *1 (E.D. Cal. Oct. 7, 2013) (dismissing a complaint where the court was "unable to determine if [the plaintiff's claim was] based upon state or federal law"). This is particularly true in light of the extremely limited factual details Plaintiff includes in the Complaint to support her negligence claim.

Moreover, even were the Court able to determine whether Plaintiff's claims are brought pursuant to Hawaii state law or maritime law, the Complaint would still fail under Rule 12(b)(6), as it sets forth only bare and conclusory allegations of wrongdoing. Specifically, with respect to the negligence claim, Plaintiff alleges that she received no safety instructions prior to boarding the Banana Boat, and that the boat operator "made a too sharp turn at high speed," and that Defendants "failed to protect Plaintiff . . . and were negligent"; however, she makes no allegation that either Defendant owed her a duty, and she entirely fails to specify what, if any, conduct, each Defendant undertook. (See Compl. ¶¶ 10, 12-19.) Indeed, the Complaint does not even contain any allegations regarding which Defendant actually owned or operated the Banana Boat vessel upon which she rode when she was allegedly injured. (See generally id.)

16

Further, with respect to her remaining claims for relief, Plaintiff has likewise failed to provide sufficient factual allegations to plausibly state a claim for strict liability or breach of warranty. As noted above, it is unclear whether Plaintiff is bringing these claims under Federal maritime law or Hawaii state law. Moreover, even assuming, for example, Plaintiff's strict liability claim were brought pursuant to maritime law, Plaintiff has failed to allege even the basic elements of such a claim. Specifically, Plaintiff does not allege that either Defendant was the seller or manufacturer of the allegedly defective Banana Boat ride, as required for a strict liability claim in admiralty. See Saratoga Fishing Co. v. Marco Seattle Inc., et al., 69 F.3d 1432, 1437-38 (9th Cir. 1995) (setting forth the elements of a strict products liability claim in admiralty), rev'd sub nom. on other grounds Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875 (1997).

Assuming, on the other hand, that Plaintiff's strict liability claim sounds in Hawaii state common law, she has likewise failed to allege the elements of such a claim, as the Complaint contains no assertion as to what the alleged defect in the Banana Boat product was that allegedly caused her harm. See Acoba v. General Tire, Inc., 986 P.2d 288, 303-04 (Haw. 1999) (stating that a strict products liability claim requires the plaintiff to show "(1) a defect in the product which rendered it

unreasonably dangerous for its intended or reasonably foreseeable use; and (2) a causal connection between the defect and the plaintiff's injuries" (alteration omitted)). Plaintiff makes the bare assertion that the Banana Boat "was unreasonably dangerous and in a defective condition" without any additional factual allegations. Such a "formulaic recitation of the elements of a cause of action" is simply insufficient to defeat a motion to dismiss. See Twombly, 550 U.S. at 555.

Similarly, Plaintiff's breach of warranty claim is altogether insufficient to give Defendants adequate notice of the claims against them. As noted above, it is entirely unclear from the face of the Complaint whether Plaintiff is bringing a claim for breach of the warranty of seaworthiness (under maritime law), or breach of warranty in the state law products liability context. The Complaint contains only bare allegations that amount to legal conclusions, and falls far short of providing "sufficient factual matter to state a claim to relief that is plausible on its face." Id. at 570 (citations and internal quotation marks omitted).

While the Court acknowledges that Plaintiff's Complaint need not contain "detailed factual allegations" to survive a 12(b)(6) motion, Plaintiff's "obligation to provide the 'grounds' of [her] 'entitlement to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause

of action." Id. at 555. Here, as discussed above, Plaintiff has failed to sufficiently allege the grounds for her entitlement to relief with respect to all three causes of action brought in the Complaint. The Court therefore GRANTS Defendants' Motion insofar as it seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III. Leave to Amend

As noted above, the Court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts." Ray, 699 F.3d at 1079. Leave to amend "is properly denied, however, if amendment would be futile." Carrico, 656 F.3d at 1008. Here, Plaintiff has not sought the Court's leave to file an amended complaint in the event of dismissal; however, because the Court cannot conclude at this time that any such amendment would be futile, the Court will grant Plaintiff leave to amend.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss. Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE in its entirety. Plaintiff must file any amended complaint within thirty days of the entry of this Order. Any amended complaint must correct all the deficiencies noted in this Order or Plaintiff's claims will be dismissed with prejudice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 31, 2015



_____
Alan C. Kay
Senior United States District Judge

Song v. KBOS, Inc. et al., Civ. No. 15-00094 ACK RLP, Order Granting Defendants' Motion to Dismiss.